*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
                                    :
BERNADETTE SEJECK,                  :
                                    :
                  Plaintiff,        :     Civil Action No. 18-16734
                                    :
      v.                            :
                                    :     **OPINION**
                                    :
NANCY A. BERRYHILL,                 :
Acting Commissioner of Social Security, :
                                    :
                  Defendant.        :
_____ :

**WOLFSON, Chief Judge:**

Bernadette Sejeck ("Sejeck" or "Plaintiff") appeals from the final decision of the Acting Commissioner of Social Security, Nancy A. Berryhill ("Defendant") denying Plaintiff disability benefits under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") opinion was based on substantial evidence and, accordingly, affirms the decision.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on February 20, 1974, making her 39 years old on her disability onset date. AR 18, 67. She graduated from college and has past relevant work experience as a trust account supervisor (a sedentary, skilled job). AR 227, 273, 294, 335. Plaintiff seeks disability benefits due to degenerative disc disease post cervical spine fusion and carpal tunnel syndrome, alleging that that pain and numbness in her neck, arms, and hands has rendered her incapable of performing any and all kinds of work.

1

Plaintiff protectively filed an application for disability and disability insurance benefits on September 30, 2014, alleging onset as of March 29, 2013. AR 15. Defendant denied Plaintiff's applications on January 16, 2015, and upon reconsideration on March 28, 2015. AR 95-99, 101-103. Plaintiff then requested a hearing before an ALJ. AR 110-11. On August 11, 2017, a video hearing was held before ALJ George Michael Gaffaney, at which at an impartial vocational expert ("VE") and Plaintiff, represented by counsel, testified. AR 31-66. In a decision dated October 27, 2017, the ALJ found that Plaintiff was not disabled. AR 12-30. Plaintiff asked the Appeals Council to review the decision, which was denied by Order dated October 15, 2018. AR 1-6.

Plaintiff contests several aspects of the ALJ's decision. She argues that the ALJ 1) erred at step two of the sequential evaluation process by ignoring or misevaluating evidence related to Plaintiff's migraines and anxiety; 2) erred in the weighing of the opinion evidence of Plaintiff's treating physicians; 3) erred in his hypothetical question to the VE by not including certain alleged impairments; and 4) improperly evaluated the credibility of Plaintiff's subjective complaints.

### A. Medical Evidence

Prior to her disability onset date, Plaintiff suffered from chronic migraines, as well as Generalized Anxiety Disorder; however, these conditions apparently did not impact Plaintiff's ability to work. Then, in April 2013, after Plaintiff awoke and suddenly felt something "pop," she developed a stiff neck. AR 453, 1012. She initially opted for conservative treatment measures, including "chiropractic manipulation, heat and ice" but eventually resorted to neck surgery, an anterior cervical discectomy and fusion, in September 2013. AR 342-417, 435-36, 449. Following the surgery, an MRI study of Plaintiff's cervical spine confirmed her cervical

degenerative changes were stable; nerve conduction and EMG studies of Plaintiff's right leg were normal; and a lumbar spine MRI showed no evidence of disc disease. AR 472, 509, 517, 1024.

The surgery initially alleviated Plaintiff's pain, but it returned three months later. AR 1012. After reviewing her normal physiological tests, her doctor at the time, Dr. David J. Lamb remarked that he was "at a loss to identify what is causing her persistent pain." AR 509. Over the next several years, Plaintiff received a variety of treatments for complaints of bilateral arm and feet numbness and pain, including visiting a neurologist and pain management providers, physical therapy, tried various medications and acupuncture, and underwent injections. AR 594-1044. Because medications caused significant side effects and provided no pain relief, however, Plaintiff stopped taking them and she discontinued pain management treatment in January 2015. *See, e.g.*, AR 84, 862-63, 892, 940, 1012. Although Plaintiff was evaluated for a spinal cord stimulator, she elected not to proceed with the treatment. AR 987. After June 2017 diagnostic studies confirmed carpal tunnel syndrome, Plaintiff elected to undergo right carpal tunnel release surgery in July 2017, which went "very well" and improved the numbness in her hand. AR 983-90.

Throughout the relevant period, Plaintiff continued to report persistent pain, yet her treating physicians could not identify the pain's precise source. Indeed, her musculoskeletal and neurological findings remained essentially normal throughout the entire period. *See, e.g.*, Tr. 454, 496, 507, 673, 684, 713-14, 717, 720, 723, 727, 731, 734, 737, 740, 802, 807, 811, 814-15, 818, 822, 825-26, 859, 861-64, 890, 893, 899, 901, 905, 909, 913, 917, 921, 941, 943-45, 947, 950, 953, 956-57, 960, 964, 980, 988, 1003, 1006, 1013, 1017, 1020-21. Plaintiff exhibited an upright, steady gait; she could heel-and-toe walk; and she did not use an assistive device. *Id.* She

had normal posture with no guarded deviation; full (5/5) muscle strength in her hands, arms, and legs; the ability to perform normal rapid alternating movements of the hands; normal muscle tone; normal sensation to light touch; and negative straight leg raising. *Id.* She had full, painless range of motion in her neck, shoulder, elbows, wrists, and fingers. Tr. 988, 991.

Several treating and reviewing medical sources provided opinions about Plaintiff's work-related functioning. In July 2013, family practitioner Howard Cohen, D.O., reported on an Aetna Attending Physician Statement, which he completed to support Plaintiff's long-term disability claim with her former employer, that Plaintiff had "no ability to work." AR 363. In April 2014, treating neurologist Arnold Witte, M.D., reported that Plaintiff had been taking Lyrica, which she had been unable to tolerate, and, although she was "trying to increase her ability to work," she still had "significant pain sitting which makes her still unable to work." AR 615, 942. In May 2014, Dr. Witte opined that Plaintiff was "intellectually acute" with "fully intact" strength in the upper and lower extremities, unremarkable gait, "no sensory deficit to cold, vibration, or Rombert," and fairly brisk reflexes. AR 614. He remarked that she was "surprisingly vague" about her symptoms of burning pain and advised that she "should strongly consider returning to work even with baseline discomfort, as I anticipate this will be a long road." AR 614. In July 2014, Dr. Witte reported that though plaintiff was "continuing to struggle" with pain and was "miserable symptomatically," "[s]he has no symptoms." AR 944. He again suggested that Plaintiff "actively consider looking for work which would not necessitate extensive use of her hands," and he was "pessimistic" about finding treatment that would enable Plaintiff to return to her prior position. AR 944. In November 2014 he stated that that he found her cause "highly unusual," as, despite her reports of pain, which he found to be genuine, "she has never had significant findings on physical examination." AR 1003. He concluded, "I do not

4

disagree that there is nothing on her physical exam which would prevent her from performing a sedentary task. However, she does not appear capable of doing so secondary to discomfort." AR 1003.

In May 2014, Plaintiff visited Dr. Ricardo Cruciani of Capital Health Medical Center, Center for Comprehensive Pain Management and Palliative Care. Dr. Cruciani noted that Plaintiff noted suffered from significant pain, but that she reported that "she can deal with the pain but would like to regain some of her function ability [sic] and return back to work." AR 946. He prescribed her Topoxam, due to Plaintiff's reports that she had difficulty sleeping. AR 947.

In September 2014, a neurologist issued a Physician Review report for purposes of Plaintiff's long-term disability claim with her former employer. AR 1004-07. The physician opined that "the documentation provided does not demonstrate objective evidence of a neurologic impairment in physical or cognitive functionality from 9/3/14 through 12/31/14." AR 1006.

Plaintiff also visited nurse practitioner Shannon Lynn Brown, M.S.N./A.P.N., at various points throughout the relevant period. AR 1030. Brown noted Plaintiff's persistent paint, which Plaintiff compared to the feeling "after your hands have been frost bitten and start to warm up again." AR 1030. Nurse Brown noted that Plaintiff would have difficulties returning back to sedentary work, as use of fine motor skills seemed to exacerbate her symptoms, but also "acknowledge[d] I do not have any additional objective evidence to support the patient's subjective symptoms." AR 1030. In January 2015, Nurse Brown completed an Aetna Capabilities and Limitations Worksheet stating that Plaintiff could perform a range of light work involving occasional manipulative activities, but she could only work for two hours or less per

day. AR 1027. On the same day, Nurse Brown completed an Aetna Attending Physician Statement indicating that Plaintiff had "no ability to work." AR 1029.

Plaintiff visited Kessler Rehab Center in 2015. AR 850. Although test results indicated difficulty with certain hand-related activities, the Center assessed her current pain level as only "3/10" and only moderate weakness and loss of function. AR 850.

In January 2015, state agency physician Dr. Arthur Pirone reviewed the record and opined that Plaintiff could perform the full range of light work. AR 73-74. Dr. Pirone reported that Plaintiff had no manipulative limitations. AR 74. In March 2015, state agency physician Lourdes Marrero, M.D., reviewed the updated record and seconded Dr. Pirone's assessment that Plaintiff could perform the full range of light work. AR 85, 87-88. Like Dr. Pirone, Dr. Marrero agreed that Plaintiff had no manipulative limitations. AR 85, 88.

### B. Plaintiff's Testimony Before ALJ

Plaintiff testified before the ALJ at the hearing in August of 2017. She has two adult children, and, during the relevant period, she lived in a home with her boyfriend and her two children. AR 36. Plaintiff testified that she has "shooting pains, numbness, tingling, burning similar to like frostbite in [her] hands" and that "occasionally it'll shoot from my neck down my arms. My knees to my lower feet, numbness and tingling, muscle weakness, chronic migraines." AR 40. She testified that it is uncomfortable for her to sit for prolonged periods of time and that she tries to move around most of the day. AR 50. She also testified to being able to navigate steps slowly. AR 53.

Regarding her daily activities, Plaintiff testified that she prepares simple meals daily, washes laundry and dishes, and performs household chores like sweeping and vacuuming. AR 58-59. She drives occasionally and shops at the grocery store. AR 50-51. She reads, watches television, uses the computer, and uses Facebook. AR 59. She traveled to Florida for a week to

help move her boyfriend's son. AR 58-59. Plaintiff also testified that she does not attend any clubs, churches, church groups, and generally does not participate in social activities out of the house. AR 56.

### C. Vocational Expert's Testimony

At the hearing, the ALJ took the testimony of Catherine Tweedie, an impartial VE. AR 60-64. The ALJ asked the vocational expert to assume a hypothetical person of Plaintiff's age, education, and work experience who could lift 20 pounds occasionally and 10 pounds frequently; stand and sit for six hours during an eight-hour workday with a sit/stand option; frequently climb stairs, stoop, balance, kneel, crouch, and crawl; occasionally climb ladders; and occasionally handle bilaterally. AR 62-63. The vocational expert testified that the hypothetical person could not perform Plaintiff's past relevant work as a trust account supervisor. AR 63. The vocational expert further testified that such a person could perform a significant number of light, unskilled jobs existing in the national economy, such as counter clerk (117,000 national jobs), usher (89,600 national jobs), and rental clerk (116,700 national jobs). AR 62-63.

### D. ALJ's Decision

ALJ Gaffaney issued his decision on April 25, 2016. AR 15-29. At step two, he concluded that Plaintiff had the severe medically determinable impairments of degenerative disc disease status post cervical spine fusion and bilateral carpal tunnel syndrome. AR 17. At step three, he found that Plaintiff's impairments did not meet or equal one of the listed impairments. AR 18. At step four, the ALJ found that Plaintiff had the RFC to perform light work, with limitations designed to address her physical symptoms. AR 18-21. With the assistance of the testimony of the VE, the ALJ concluded that Plaintiff could not perform her past relevant work as a trust account supervisor. AR 21-22. At step five, and again in consultation with the VE, the ALJ determined that Plaintiff retained the RFC to perform the following jobs that exist in

significant numbers in the national economy: counter clerk, usher, and rental clerk. AR 22-23. Therefore, the ALJ found that Plaintiff was not disabled from March 29, 2013 through the date of his decision. AR 23.

## II. STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

8

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the

national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id*.

### III. DISCUSSION

Plaintiff contests several aspects of the ALJ's decision. She argues that the ALJ 1) erred at step two of the sequential evaluation process by ignoring or misevaluating evidence related to Plaintiff's migraines and anxiety; 2) erred in the weighing of the opinion evidence of Plaintiff's treating physicians; 3) erred in his hypothetical question to the VE by not including certain alleged impairments; and 4) improperly evaluated the credibility of Plaintiff's subjective complaints.

#### A. The ALJ's Step Two Analysis of Plaintiff's Migraines and Anxiety

Plaintiff first contends that the ALJ erred at step two of the sequential evaluation process by discounting or ignoring relevant evidence of Plaintiff's migraines and anxiety, in determining that these conditions were not "severe." In that regard, Plaintiff contends that the ALJ neglected to mention Plaintiff's stint in Kessler Rehab, her treatment for her migraines, or her group therapy for her anxiety.

At step two, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 42. The claimant has the burden of

showing that an impairment is severe. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144 (3d Cir. 2007).

With regard Plaintiff's migraines, the ALJ concluded that "there is no evidence that this impairment resulted in minimal functional limitations and therefore, it is non-severe." AR 18. While the ALJ did not specifically discuss the evidence related to Plaintiff's migraines, Plaintiff has failed to identify precisely what medical evidence the ALJ overlooked in reaching his conclusion that Plaintiff's migraines were not "severe." For instance, while Plaintiff testified at trial that her migraines were worsening and could last for prolonged periods of time, Plaintiff has not provided any medical evidence that her condition significantly limited her ability to do basic work. In that regard, Plaintiff's brief only references a single doctor who merely *mentioned* the fact that Plaintiff suffered from chronic migraines and discussed a single severe incident that had not recurred since. AR 979. Thus, consistent with the ALJ's conclusions, none of this evidence provides any support that Plaintiff's migraines constituted a "severe" impairment.

As for Plaintiff's anxiety, the ALJ recognized that the condition constituted a medically determinable impairment.[1] However, after evaluating the "four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments," the ALJ appropriately concluded that the condition did not more than minimally limit Plaintiff's ability to perform basic mental work activities. For instance, the ALJ noted that Plaintiff drives locally, uses Facebook occasionally, creates to-do lists, take care of personal needs most of the time, prepares simple meals, washes the dishes, sweeps, vacuums. Although Plaintiff takes issue with the ALJ's failure to mention Plaintiff's stints in group therapy and visit

---

[1] It should be noted that Plaintiff apparently was diagnosed with Generalized Anxiety Disorder in 2005, *see* AR 343, yet continued to work with the condition through her alleged disability onset date.

12

to Kessler Rehab Center, the Record indicates that these visits were primarily related to Plaintiff's physical impairments and general pain management, rather than specifically to address Plaintiff's anxiety. AR 850-52.

Moreover, even if the ALJ did commit error in overlooking this evidence—which, again, Plaintiff has not demonstrated—"ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)). Plaintiff therefore must "*explain* [ ] ... how the ... error to which he points could have made any difference." *Id.* (quoting *Shinseki*, 556 U.S. at 413). And, in this instance, despite concluding that that Plaintiff's migraines and anxiety were non-severe, the ALJ found that a combination of Plaintiff's physical impairments *were* severe and, therefore, found in Plaintiff's favor at the Step Two analysis. In such instances, the Third Circuit has explained, "even if [the ALJ] had erroneously concluded that some of her other impairments were non-severe, any error was harmless." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (citing *Rutherford v. Barnhart,* 399 F.3d 546, 553 (3d Cir.2005)).

Thus, the ALJ's decision not to include Plaintiff's migraines or anxiety in Plaintiff's RFC is supported by substantial evidence.

### B. Medical Opinion Testimony

Plaintiff next contends that the ALJ erred by not according the proper weight to Plaintiff's treating physicians, and instead assigning greater weight to the state agency medical examiners.

It is well established that "the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c).)

Furthermore, while an ALJ must consider the opinions of treating physicians, "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ" where it is not well supported or there is contradictory evidence. *Chandler*, 667 F.3d at 361 (alteration in original) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)).

Under 20 C.F.R. § 404.1527(c)(2), a treating source's opinion will be given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Several factors may also be used to determine the weight given to a medical opinion including: the length of the treatment relationship; the nature and extent of the treatment relationship; supportability by the medical evidence; and consistency with the record as a whole. *Id.* If a treating source's opinion conflicts with that of other medical sources, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reasons." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). That is, the ALJ must rely only on "contradictory medical evidence" in rejecting the treating source's opinion, rather than "credibility judgments, speculation or lay opinion." *Id.* An ALJ is required to provide "an explanation of the reasoning behind [his] conclusions," including "reason(s) for discounting rejected evidence." *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d. Cir. 2001).

Here, the ALJ determined that Plaintiff had the RFC to perform light work, meaning that Plaintiff could no longer perform her past relevant work as a trust account supervisor, but, after considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ determined Plaintiff could make a vocational adjustment to light, unskilled jobs existing in significant numbers in the national economy.

Plaintiff contends that, in reaching this conclusion, the ALJ improperly assigned little weight to medical evidence from Plaintiff's treating physician, Howard Cohen, who, in a July 17, 2013 Aetna Attending Physician Statement, marked that the claimant had no ability to work. However, in rejecting this conclusion, the ALJ did not, as Plaintiff contends, ignore medical evidence or rely on lay speculation. Rather, he appropriately noted that it is the job of the Commissioner, not the treating physician, to make a disability determination. Then, after considering the medical opinions of record, and explaining the weight he assigned to them, he articulated specific reasons for discounting Dr. Cohen's opinion that were supported by substantial record evidence:

> Although the claimant alleged total disability due to a burning feeling in her hands and arms as well as shooting pains, partial numbness, swelling, tingling from her neck down to her arms, and muscle weakness in her knees down to her feet, the preponderance of evidence demonstrates that her impairments are not as severe as alleged. The claimant underwent an anterior cervical discectomy and fusion of the C5-C6 and C6-C7, with left iliac crest bone graft on September 10, 2013. On February 12, 2014, Neurologist Arnold S. Witte, M.D., reported that the claimant's nerve conduction studies and the electromyogram (EMG) of the right leg were normal. On July 7, 2014, Dr. Witte determined that the claimant was clinically stable based on her physical exam. In addition, her pain management treatment was routine. For example, on June 25, 2014, a trial of Zanaflex 2 mg was recommended, she was instructed to continue taking her current medication and to follow-up in one month.

AR 19 (citations omitted). Moreover, the ALJ reasonably assigned great weight to the opinions of state agency reviewing physicians Drs. Pirone and Marrero because their opinions were supported by that medical evidence. These doctors both opined that Plaintiff could perform the full range of light work. As the ALJ correctly explained, Drs. Pirone and Marrero were "familiar with the Social Security disability program." AR 20. Indeed, the controlling regulations describe state agency reviewing physicians as "highly qualified" and "experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). The ALJ also explained that the opinions of Drs.

15

Pirone and Marrero merited more weight because they "generally align[ed] with the preponderance of the evidence", particularly Plaintiff's normal musculoskeletal and neurological findings, which the ALJ discussed throughout the decision.[2]

Thus, because the weight that the ALJ assigned to the various physicians was supported by the record, substantial evidence confirms his conclusions.

### C. ALJ's Findings and Question to Vocational Expert

Plaintiff also challenges the hypothetical question that the ALJ posed to the VE. Here, the ALJ asked the vocational expert to assume a hypothetical person of Plaintiff's age, education, and work experience who could lift 20 pounds occasionally and 10 pounds frequently; stand and sit for six hours during an eight-hour workday with a sit/stand option; frequently climb stairs, stoop, balance, kneel, crouch, and crawl; occasionally climb ladders; and occasionally handle bilaterally. AR 62-63.

The Third Circuit has ruled that "an ALJ's hypothetical must include all of a claimant's impairments." *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004). However, where an ALJ does not include an alleged impairment or limitation in his or her RFC determination, the ALJ need not pose that alleged impairment or limitation to the vocational expert. *See Schmits v. Astrue*, 386 F. App'x 71, 76 (3d Cir. 2010) ("Because that limitation is not in [the claimant's]

---

[2] Though unclear whether Plaintiff challenges the ALJ's decision to assign little weight to the opinions of Nurse Brown that Plaintiff could not work, his decision to do so was supported by substantial evidence. First, as the ALJ accurately noted, Nurse Brown was not an acceptable medical source under the regulations. AR 21. 20 C.F.R. § 404.1513 (explaining that a nurse practitioner is not an acceptable medical source and is, instead, an "other source"). The ALJ further explained that her opinion did "not align with the preponderance of record evidence. AR 21. More specifically, the ALJ discussed that Nurse Brown's opinion was inconsistent with Plaintiff's routinely normal musculoskeletal and neurological examination findings, which showed Plaintiff had a normal gait, the ability to rise on her toes and walk on her heels, negative straight leg raising, full (5/5) muscle strength in her arms and legs, intact sensation, and full range of motion in her shoulders, elbows, wrists, and fingers. The ALJ, therefore, did not err in assigning little weight to Brown's opinion.

RFC, the ALJ did not need to consider it at Step Five" in posing a hypothetical to a vocational expert); *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 287 (3d Cir. 2006) (finding that the ALJ did not err in failing to include in his hypothetical questions to the vocational expert "specific reference[s] to [the claimant's] functional loss, mental limitations, and subjective complaints of pain and fatigue," where the ALJ had already discredited those alleged impairments, excluding them from his RFC determination); *Russo v. Comm'r of Soc. Sec.*, No.13–06918, 2014 WL 6991987, at *11 (D.N.J. Dec. 10, 2014) (observing that where "an ALJ has appropriately rejected a limitation, that limitation need not be conveyed to the vocational expert.").

To the extent that Plaintiff challenges the ALJ's failure to include Plaintiff's migraines or anxiety in his hypothetical, as already explained, the record did not indicate that Plaintiff's migraines constituted an impairment under the regulations or that Plaintiff's mild anxiety was severe. At Step Two, the ALJ explained his reasons for not including these impairments in Plaintiff's RFC, and, as already explained, his determination was reasonable. Thus, the ALJ was fully justified in not including these alleged impairments in his hypothetical to the ALJ. *See Schmits v. Astrue*, 386 F. App'x 71, 76 (3d Cir. 2010) ("Because that limitation is not in [the claimant's] RFC, the ALJ did not need to consider it at Step Five" in posing a hypothetical to a vocational expert); *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 287 (3d Cir. 2006) (finding that the ALJ did not err in failing to include in his hypothetical questions to the vocational expert "specific reference[s] to [the claimant's] functional loss, mental limitations, and subjective complaints of pain and fatigue," where the ALJ had already discredited those alleged impairments, excluding them from his RFC determination); *Russo v. Comm'r of Soc. Sec.*, No.13–06918, 2014 WL 6991987, at *11 (D.N.J. Dec. 10, 2014) (observing that where "an ALJ

has appropriately rejected a limitation, that limitation need not be conveyed to the vocational expert.").

Moreover, as to all other of Plaintiff's limitations, they were properly accounted for in the hypothetical. Although Plaintiff suggests otherwise, the ALJ *did* include Plaintiff's credibly established manipulative limitations in his question by limiting the hypothetical to "occasional handling bilaterally." Plaintiff points to no other credibly established limitations that the ALJ excluded from his hypothetical, and the Court is likewise unable to discern any. Having included all of Plaintiff's medically determinable limitations in his question, the ALJ was not compelled to include any others. *See Priel v. Astrue*, 453 F. App'x 84, 87–88 (2d Cir. 2011) (noting that "ALJ properly declined to include in his hypothetical question symptoms and limitations that he had reasonably rejected.").[3]

Thus, the ALJ did not err in posing his hypothetical to the VE.

**D. The ALJ Properly Evaluated the Credibility of Plaintiff's Subjective Complaints**

Plaintiff last argues that the ALJ erred in his evaluation of Plaintiff's subjective testimony as to the severity of his impairments. Credibility determinations are entitled to substantial deference on appeal. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (stating that courts "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness' demeanor."); *see also Izzo v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 280, 286 (3d Cir. 2006) (finding that "a reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

---

[3] Although Plaintiff claims that the VE found that Plaintiff could not perform any jobs that existed in the national economy, she only did so in response to a different hypothetical that did not match the Plaintiff's RFC. *See* AR 63 (posing hypothetical of a sedentary person, who, *inter alia*, lifts ten pounds occasionally and five frequently). In response to the hypothetical that did match Plaintiff's RFC, the VE determined that Plaintiff could work as a counter clerk, usher, or furniture rental clerk.

A claimant's subjective symptoms must be corroborated by objective medical evidence; *i.e.*, evidence of a medically determinable impairment that can reasonably be expected to produce the claimant's underlying symptoms. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529). The latest Social Security Ruling on this subject, SSR 16-3p, effective March 28, 2016, describes how ALJs are to evaluate a claimant's statements about symptoms. SSR 16-3p makes clear that the central concept is consistency:

> In determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, we will consider the consistency of the individual's own statements. To do so, we will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances.
>
> We will consider statements an individual made to us at each prior step of the administrative review process, as well as statements the individual made in any subsequent or prior disability claims under titles II and XVI. If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record, we will determine that an individual's symptoms are more likely to reduce his or her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in a age-appropriate manner.

In accordance with this regulation, the ALJ recorded Plaintiff's subjective complaints throughout his decision, and considered them in the context of the entire record. However, for the reasons already explained, the ALJ found that the medical evidence did not support Plaintiff's testimony regarding the significance of her disability. *See* AR 20 ("Although the claimant reported daily activities that were fairly limited, two further factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, her allegedly limited daily activities are not corroborated. Secondly, the preponderance of medical evidence outweighs the

claimant's allegations regarding her limitations.") Thus, the ALJ did not err in her treatment of Plaintiff's subjective complaints.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed.


Dated: December 27, 2019             <u>/s/ Freda L. Wolfson</u>
                                      Hon. Freda L. Wolfson
                                      United States Chief District Judge